IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bethshean A. Hines,                :

          Plaintiff,          Civil Action 2:13-cv-1043

                        :

     v.               Judge Sargus

                        :

Commissioner of Social Security,    Magistrate Judge Abel
          Defendant.      :

## REPORT AND RECOMMENDATION

Plaintiff Bethshean A. Hines brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her applications for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Hines maintains that she became disabled on October 5, 2007, at age 24, due to a lower back injury. (*PageID* 244.) Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- the administrative law judge committed reversible error in not finding that plaintiff meets the requirements of listing 1.04a; and

- the administrative law judge to evaluate the plaintiff's pain in relation to the residual functional capacity; and

- the administrative law judge committed reversible error by not appointing a medical expert to testify to the plaintiff's limitations.

*See* Doc. 11.

**Procedural History.**  Plaintiff Hines protectively filed her applications for disability insurance benefits and supplemental security income on September 15, 2010, alleging that she became disabled on October 5, 2007, at age 24.  (*PageID* 225-28.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On July 3, 2012, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 79-105.)  A vocational expert also testified.  (*PageID* 105-14.)  On August 20, 2012, the administrative law judge issued a decision finding that Hines was not disabled within the meaning of the Act.  (*PageID* 166-90.)  On August 29, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 46-49.)

**Age, Education, and Work Experience.**  Hines was born on July 3, 1983.  (*PageID* 79, 225, 253.)  She has a high school education.  (*PageID* 245.)  Hines has past relevant work experience as a furniture sales person; desk clerk; cleaner/ housekeeping; and cashier.  (*PageID* 246, 258.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Hines's testimony at the administrative hearing as follows:

> The claimant testified she was lifting a table at work when she felt a sharp pain go from her back up to her head and into her right leg.  She said her manager told her to keep working so she did not go to the emergency room until the following day.  She said they treated her with medications and gave her a follow-up appointment with a physician.  She said she

2

contacted workers' compensation, filed a claim and received benefits for a year.  She said the benefits stopped when her doctor "quit on her."  She said she had recently been allowed to receive workers' compensation again.

Ms. Hines testified the pain in the lower part of her back was constant and 8/10 on an average day.  She said if she was walking too much or bending too much or if she moved the wrong way, the pain would "shoot" down her leg and intensify to 10/10.  She said she would then need to lie down.  She said the sharp pain was intermittent, but the numbness and tingling was constant.  She said she had numbness in her foot.

The claimant testified her back pain had gotten worse and she had not gotten the help she needed at that time.  She said the pain goes through her right leg and right hip and sometimes will go through her left leg.  She said her feel would swell.  She said she had problems with stairs.  She said her right leg got weak sometimes.  She said she would have a numb-ing feeling and could not hold the pedal down in her car.  She said her leg would shake.  She said she took Cymbalta for sleep and pain to no avail.  She said she slept three to four hours at night because her back and leg kept her turning to get in the right position.  She said her energy was down during the day, with bursts of energy.  She said she napped three to four times a day when she was lying down two hours at a time.  She said she used a cane when her leg gave out.  She said she would elevate her leg four to six hours intermittently during the day and use ice for the swelling in her feet.  Other times she said she would just lie down.  She estimated she could stand for 30 minutes; sit for 30 minutes; and walk for 20 minutes.  She said her medication caused her to experience nausea, weakness, confusion and drowsiness.  She said she did not drive because of the drowsiness.

Ms. Hines testified she had tried physical therapy, aqua therapy and chiropractic care in the past.  She said she had been seeing a physician who had her on Percocet, but the last time she saw him he said he did not know what else to do for her.  She said she was seeing a new physician and had not received any injections in her back because the injections had only recently been approved through workers' comp.

(*PageID* 175-76.)

**Medical Evidence of Record.**[1]  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the relevant evidence.

Hines suffered an industrial injury to her back and hips while working on October 5, 2007.  (*PageID* 492, 665.)

Doctor's Hospital North.  Hines presented to the emergency room for her industrial injury on October 17, 2007, complaining of low back pain.  (*PageID* 1045-47.)  Physical examination revealed Hines's gait was slightly antalgic.  All her movements were cautious.  She had tenderness with palpation of the low back area, with a slight preference on the right.  She had a little tenderness on the left.  She had limited lumbar flexion.  She had intact deep tendon reflexes patellar and calcaneal tendon.  Sensory function intact to light touch.  Hines was able to bear weight on her heels and on toes. (*PageID* 1046.)  She was prescribed Percocet.  (*Id.*)

OSU Medical Center Occupational Health Department  Hines began treating with Eric A. Schaub, M.D., on November 1, 2007.  She complained of pain to her lower back and right leg.  Dr. Schaub diagnosed Hines with a lumbar strain, prescribed Vicodin and recommended that she return to work the following day with a maximum lift-

---

[1]Plaintiff focuses her contentions on her physical work limitations rather than her mental work limitations (Doc. 11, 17), and consequently, a detailed description of her mental impairments is unwarranted.

ing of 5 pounds; sitting with stand/walk for brief periods as needed and she should avoid bending.  (*PageID* 487, 493.)

Hines returned on November 8, 2007, reporting that her symptoms were unchanged.  Hines rated her pain at a level of 8 on a 0-10 visual analog scale.  Hines had not returned to light duty at work.  On examination, Dr. Schaub found tenderness over the lumbar spine and no radicular symptoms with straight leg raising.  He diagnosed Hines with a lumbar strain with symptoms suggestive of right leg radiculopathy and requested an MRI.  Dr. Schaub continued Hines's medication, Naprosyn and Vicodin. (*PageID* 488.)

The MRI of Hines's lumbar spine taken on November 19, 2007 was "unremarkable."  (*PageID* 491.)

On November 29, 2007, Dr. Schaub reevaluated Hines for her "persistent low back pain."  On examination, Hines appeared to be moderately uncomfortable with tenderness over the lumbar spine from L2-L5 and limited right hip flexion.  Dr. Schaub found no spasm of the lumbar paraspinal muscles.  (*PageID* 489.)  Dr. Schaub assessed a sacroiliac strain (allowed condition) and noted Hines also appeared to have lumbar strain and right hip strain with possible right hip bursitis.  He recommended physical therapy and told Hines that "she needs to continue to try to work through the light duty process, as [he] believe it will benefit her to continue to be active."  (*PageID* 489- 90.)

When seen on December 20, 2007, Hines reported that her pain improved.  Dr. Schaub found Hines appeared to be comfortable sitting on the table during examina-

5

tion.  He also noted that they were awaiting approval for physical therapy and that Hines was not having to take as much medication and was looking for a new job. (*PageID* 486.)

In March 2008, Hines reported that she was making some progress in physical therapy.  On examination, Dr. Schaub found tenderness over the lumbar spine, but otherwise benign findings.  (*PageID* 483.)

On May 27, 2008, Dr. Schaub asked Hines to undergo a random urine drug screen which she was unable to provide.  Hines reported she had to leave the facility. Dr. Schaub informed Hines that he would be unable to continue to prescribe further narcotics. (*PageID* 465.)

In June 2008,  Hines noted that her pain remained at 7/10.  Dr. Schaub scheduled Hines for physical therapy.  (*PageID* 460.) Hines continued to see Dr. Schaub approximately every two months though January 2009.  At that time, Hines reported that her pain remained at 6/10.  On examination, Dr Schaub found minimal tenderness of the lumbar spine, but otherwise benign findings.  Dr. Schaub recommended chiropractic treatment.  (*PageID* 398.)

<u>Stephen T. Woods, M.D.</u>  On January 10, 2008,  Dr. Woods, a physical medicine and rehabilitation specialist, evaluated Hines for Dr. Schaub. Hines described her low back pain as aching and stabbing with intermittent numbness and tingling over the right anterior lateral thigh.  A physical examination revealed normal findings, including full range of motion in all planes of her lumbar spine.  A straight leg raise test was also

6

negative.  Dr. Woods diagnosed persistent low back pain, with sprain and strain.  Dr. Woods noted that "it appears as though she has primarily mechanical discomfort and issues."  He recommended conservative care, including physical therapy, medication, and spinal injections.  (*PageID* 811-13.)

Gregory Jewell, M.D.  On March 13, 2008, Hines was seen for an independent medical evaluation for her workers' compensation ("BWC") claim by Dr. Jewell.  At the time of this evaluation, Hines reported "she is doing fine."  She reported back pain aching in nature and localized more to the right side, with occasional sharp pain with movement.  Hine complained of pain occasionally radiated as far as the right hip, with less tingling of the right thigh, but she no longer had pain down her leg.  Hines felt that physical therapy was helping.  Based on his review of Hines's medical records and examination, he diagnosed a sprain to the lumbar region.   Dr. Jewell felt that at that time, Hines should be limited to sedentary exertion as long at the work allowed her to change positions between sitting and standing as necessary and she should probably limit her lifting to 10 pounds between mid-thigh and midchest area and avoid frequent or prolonged bending.  He also felt at that time that Hines had not reached maximum medical improvement as she was continuing to improve in terms of her symptoms and findings with the physical therapy she was receiving.  (*PageID* 409-13.)

Alan H. Wilde, M.D.  Hines underwent another independent medical examination for her BWC claim on September 29, 2008, with Dr. Wilde.  An examination showed no spinal listing, normal lumbar curvature, no palpable spasms, tenderness at L3-4

with no scarring on the spine, no guarding or sensory loss, negative straight leg raising test, normal motor power, no reflex change, and normal gait. Dr. Wilde determined that Hines had reached the maximum medical improvement, as her physical examination was normal. Further, Dr. Wilde noted that the MRI from November 2007 was normal and that someone doing even heavy work would recover from a lumbar sprain within 35 days. Dr. Wilde opined that Hines could return to work as a customer service representative. (*PageID* 402-03.)

Scott C. Gosselin, D.C. Hines received chiropractic treatment with Dr. Gosselin in June and July 2009. (*PageID* 719-29.) By July 31, 2009, Dr. Gosselin noted that Hines had responded maximally to the course of chiropractic treatment, but he did not feel that she had reached maximum medical improvements. He believed that Hines would obtain further pain relief is she lost 15-20 pounds, began stretching and exercising, and stopped smoking. (*PageID* 728.)

An EMG performed on September 14, 2009, showed evidence of resolving chronic right S1 lumbar radiculopathy; clinical report of right extremity pain; and clinical report of paresthesias of the extremity on the right. (*PageID* 711-18.)

Steven Cremer, M.D. Hines underwent another independent medical examination for her BWC claim on March 15, 2010, with Dr. Cremer. Hines reported she had pain up into her back to her head and in her right leg to her toes. Hines classified her pain as "minimal to slight in intensity." Examination of her lumbar spine revealed tenderness, spasms and guarding in the lumbar paraspinals; decreased sensation at

8

L4-5; and decreased range of motion.  Dr. Cremer concluded that she has a 5% whole

personal impairment in the lumbar category.  (*PageID* 698-99.)

     Charles B. May. D.O.  )n October 28, 2009, Hines began seeing Dr. May, a family

practice physician.  (*PageID* 665-66.)  Initially, Hines reported low back pain with pain

into her right hip, which was worse with sitting, standing or walking.  (*PageID* 665.)  On

examination, Dr. May found mildly restricted range of motion of the lumbar spine in all

planes; negative straight leg raising bilaterally; no axillary motor loss or sensory loss in

either lower extremities; and non-antalgic gait that did not require ambulatory aide.

(*PageID* 666.)  Dr. May obtained new x-rays, which he felt showed some mild facet arth-

rosis at L5-S1.  (*Id.*)  The radiologist interpreted the results as normal.  (*PageID* 1168.)

Dr. May requested BWC authorization for Hines to have a spine surgeon consultation.

(*Id.*)

     When seen on December 6, 2010, for reevaluation of her low back pain, Hines

continued to complain of severe low back pain, with a stinging and burning sensation;

right lower extremity pain, paresthesias, weakness, and giving out of her right leg.  Her

symptoms radiated to her toes on the right leg, and she described the radicular sympt-

oms as "almost constant."  Dr. May found lumbar spine tenderness; myospasms and

trigger points in the lumbar region; decreased range of motion in all planes of the lum-

bar spine; 4/5 strength in the right leg and 5/5 in the left; and a positive straight leg test

on the right, while seated, at 70 degrees.  Dr. May felt Hines suffered from radiculop-

athy and requested permission from the BWC to obtain a new EMG to ascertain if Hines's S1 radiculopathy was still present. (*PageID* 1169-70.)

A May 12, 2011 EMG noted the presence of right S1 radiculopathy. (*PageID* 1201.)

On May 24, 2011, Dr. May opined that that Hines "did not suffer from any preexisting conditions in the lumbar spine as evidenced by a so-called relatively normal MRI scan six weeks after the date of injury." Dr. May also opined,

> Ms. Hines has developed a right paracentral annular fissure and disc protrusion at LS-SI with involvement of the right SI nerve root and resultant right S1 radiculopathy as a direct and proximate result of her 10/05/2007 work injury. Although the actual disc protrusion and/or annular fissure apparently was not visible on the MRI scan taken six weeks after the date of injury, I do not believe that to be too unusual. The disc was injured on the date of injury and it did take time for the disc to degenerate to the point that we see the disc in the most recent MRI scan dated 08/18/2010. The rate of change from normal to the abnormalities noted in 10/2010 is much more rapid than one would expect with any so-called normal aging or wear and tear process. It should also be noted that Ms. Hines has suffered from right leg radicular symptoms since the inception of this claim and an EMG performed on 09/16/2009 also documented radiculopathy as does the current EMG. There is obvious involvement of the LS-S1 nerve root on the current MRI scan as well.

(*PageID* 1202-03.)

Gregory Mavian, D.O. On March 22, 2010, Dr. Mavian, a neurosurgeon, evaluated Hines at the request of Dr. May. Hines complained of lower back pain and right radicular symptoms, with sitting, driving and walking. On examination, Dr. Mavian found hyperesthesia to temperature in the right leg; decreased pinprick and temperature in the L5-S1 distribution of the right leg; diminished patellar and Achilles reflexes;

10

positive straight leg raising test on the right; tenderness over the lumbosacral region; reduced range of motion of the lumbar spine; and an antalgic gait. Dr. Mavian diagnosed Hines with lumbosacral back pain, with associated right lower extremity radiculopathy; rule out nerve root compression. Dr. Mavian ordered an updated MRI. (*PageID* 701-03.)

The lumbar spine MRI taken on October 18, 2010 noted the presence of degenerative disease at L5-S1; a right paracentral annular fissure and disc protrusion at L5-S1, contacting the right S1 nerve root; and mild biforaminal narrowing at L5-S1, due to a bulging disc. (*PageID* 1148-49.)

Hines followed up with Dr. Mavian on November 8, 2010 and after reviewing the MRI results and examining Hines, Dr. Mavian felt she should be referred to a pain management specialist, further testing by way of a discogram, and possible surgical intervention if Hines was interested. (*PageID* 1136-37.)

<u>Grant Medical Center.</u> On August 18, 2010, Hines presented to the emergency room for chronic back pain; she was out of medication. On examination, she had no lower extremity weakness, no numbness or tingling; no loss of bowel /bladder; negative straight leg raise on the left and pain at 15 degrees on right. Hines had a normal neurologic examination with normal sensation, reflexes, and gait. (*PageID* 1087-93.)

<u>Kalyan Lingam, M.D.</u> Hines consulted with pain specialists, Dr. Lingam on February 6, 2012 on referral from Dr. May. After reviewing her history and examining, Hines, Dr. Lingam assessed lumbar disc herniation, lumbar radiculitis, and lumbar

sprain and requested BWC approval for right-sided lumbar medial branch blocks. (*PageID* 1263-64.)

Nick Albert, M.D./Leanne M. Bertani, M.D.  On November 15, 2010, Dr. Albert, a state agency physician, conducted a physical residual functional capacity assessment based on Hines's record.  (*PageID* 120-26.)  Dr. Albert found Hines could lift 20 pounds occasionally, 10 pounds frequently, stand and walk about 6 hours in an 8-hour work-day, sit about 6 hours in an 8-hour workday, and he's limited in his ability to push and or pull in the upper extremities.  (*PageID* 125.)  Hines can occasionally stoop, kneel, crawl, and crouch; frequently climb ramps/stairs but never climb ladders, rope, or scaffolds.  (*PageID* 125.)  Dr. Albert also determined that Hines is only partially credible given her normal motor, sensation and reflexes, normal gait, and that she is going to school and raising a 7 year old son.  (*PageID* 124.)  Another state agency reviewing physician, Dr. Bertani reviewed the updated file on March 4, 2011.  Dr. Bertani found Hines slightly more restricted.  According to Dr. Bertani, Hines was limited to standing and/or walking only 4 hours in an 8-hour workday; she can never climb ladders, rope, or scaffolds, and occasionally balance; and she must avoid unprotected heights due to antalgic gait.  (*PageID* 149-50.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2.    The claimant has not engaged in substantial gainful activity since October 5, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: lumbar strain with sciatica; degenerative disc disease demonstrated at Exhibit 6F/2; depressive disorder; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; push or pull to the same extent using hand or foot controls; stand or walk about four hours; and sit about six hours in an eight-hour work day.  She cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, balance, kneel, crouch and crawl; and must avoid all exposure to unprotected heights and hazardous machinery.  Due to mental impairments, she can understand and remember simple and some complex instructions, work where production quotas are not critical, and adapt to routine changes in a static work setting.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 3, 1983 and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant

has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 5, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 171-89.)

 **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**

- The administrative law judge committed reversible error in not finding that plaintiff meets the requirements of listing 1.04a. Hines argues that her long-standing lumbar spine condition meets or equals the criteria of Listing 1.04A based on MRI and EMG studies. Hines also argues that the administrative law judge failed to discuss with specificity, the reasons for not crediting the opinion of Dr. May. (Doc. 11 at *PageID* 1271-73.)

- The administrative law judge to evaluate the plaintiff's pain in relation to the residual functional capacity. According to Hines, the administrative law judge failed to consider that plaintiff's persistent efforts to obtain pain relief enhanced her credibility. Hines also argues that the administrative law judge did not con-sider the physical effects of plaintiff's daily activities. (*Id.* at *PageID* 1273-75.)

- The administrative law judge committed reversible error by not appointing a medical expert to testify to the plaintiff's limitations. Hines argues that there should have been a medical expert present to properly evaluate the meaning of the medical findings and to determine whether the plaintiff meets the criteria for Listing 1.04A. (*Id.* at *PageID* 1275-76.)

**Analysis.**

**1.    Listing 1.04**

The Sixth Circuit has long held "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including prov-

ing presumptive disability by meeting or exceeding a Medical Listing at step three. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Thus, if plaintiff "can show an impairment is listed in [20 C.F.R. part 404, subpart P] Appendix 1 ('the [Listings'), or is equal to a listed impairment, the administrative law judge must find the claimant disabled." *Burgess v. Sec'y of H.H.S.*, 835 F.2d 139, 140 (6th Cir. 1987). In order for plaintiff "to qualify as disabled under a listed impairment, [she] must meet all the requirements specified in the Listing." (*Id.*). As the Commissioner notes, this must be done by presenting specific medical findings that satisfy the particular Listing. *See Zebley*, 493 U.S. at 530-32. An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." (*Id.* at 530).

Plaintiff maintains that she meets Listing 1.04, which provides in pertinent part:

1.04 Disorders of the spine (e.g., herniated nucleus purposes, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 CFR Pt. 404, Subpt. P, App. 1. Here, there is no evidence of nerve root compression, and plaintiff does not meet the requirements of 1.04A as a result.

In his decision, the administrative law judge first addresses Hines's counsel's pre-hearing statement and determined that "the examining and treating physicians'

16

reports show no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as required by Section 1.04 (Exhibits 1F, 2F, 3F, 4F, 5F, 6F, 8F, 10F, 11F, 13F, 15F, 16F, 17F, and 18F).  The undersigned has considered the contentions of Mr. Woodrow, but has rejected them, as they are not supported by at least a preponderance of the evidence."  (*PageID* 172-73.)  The administrative law judge also details a lengthy review of Hines's medical history, describing her impairments and summarizing her treatment history.  (*PageID* 176–87.) For example, plaintiff's October 2010 MRI of the lumbar spine showed a disc protrusion at L5/S1 contacting the right S1 nerve root (*PageID* 1148-49), but there is no evidence of motor loss characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanies by sensory or reflex loss.  Examinations at that time showed that plaintiff had normal muscle strength, normal sensation, and mostly negative straight leg raise testing during the relevant period.  (*See PageID* 402-03, 666, 813).

Hines invokes the "treating physician" rule to argue that the administrative law judge should have accepted the opinion of Dr. May and that he failed to discuss the reasons for not crediting the opinion of Dr. May.  Dr. May is a treating physician, but the scope of his treatment is not apparent from the record.  He is a family practice physician that began treating Hines two years after her industrial accident.  Dr. May did provide an opinion as part of his treatment record, but he simply stated that Hines' industrial accident caused her injury, not that she was unable to work.  His opinion contains a diagnosis and a conclusion, but no functional deficits resulting from Hines'

17

impairments.  An opinion without supporting reasons is entitled to very little credibility and the administrative law judge so concluded.  The administrative law judge did note that Dr. May completed certificates to return to work indicating Hines was under his care on August 10, 2010, November 9, 2010, and November 25, 2010 and was able to return to work or school.  *PageID* 187, citing to *PageID* 1108, 1173-74.  The Magistrate Judge concludes that the administrative law judge did not err in his treat-ment of Dr. May's opinion.  In addition, plaintiff points to no treating physician op-inions in the record which set forth limitations inconsistent with those found by the administrative law judge.

As such, plaintiff has not met her burden to prove that she met Listing 1.04.

### 2.    The Administrative Law Judge's Credibility Finding

Plaintiff also challenges the administrative law judge's finding on the credibility of her subjective complaints of pain.  (Doc. 11 at *PageID* 1273-75).

In the administrative decision, the administrative law judge noted the following as to Hines's credibility:

> The undersigned finds the claimant's allegations are not fully credible and are inconsistent with the evidence of record.  There are material incon-sistencies in the reports of symptoms and limitations among the reports by the claimant to the SSA (including testimony and Exhibits 1E, 2E, 3E, 4E, 6E, 7E, and 9E), evaluators, and treating sources, eroding the reliability of those reports and the credibility of the claimant.  There is significant evidence of exaggeration of symptoms and limitations by the claimant in testimony, eroding the claimant's credibility.  There is significant reliance on leading questions that suggested the answers given, particularly with respect to psychological symptoms, eroding the reliability of that testi-mony.  The claimant professed to be a poor historian, eroding the reli-

> ability of reports of symptoms and limitations.  She has a history of refusing drug testing (Exhibit 1F/1).  Her activities of daily living include that she was still in school until six months earlier (Exhibit 13F/6 and testimony).  She declined steroid injections at Exhibit 13F/8.  There were no restrictions in her return to work/school order at Exhibit 4F/11.  A prescription for a cane (submitted after the hearing at Exhibit 17F) appeared to be inconsistent with her activities of daily living and the medical evidence of record in general.

(*PageID* 180.)  The administrative law judge continued with examples of inconsistent statements and activities of Hines.  (*PageID* 180-81.)

As the United States Court of Appeals for the Sixth Circuit has noted, "'[C]redibility determinations with respect to subjective complaints of pain rest with the administrative law judge.'" *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health* & *Human Servs.,* 823 F.2d 918, 920 (6th Cir.1987)).  Furthermore, "[t]he administrative law judge's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado* v. *Astrue,* 263 Fed. Appx. 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)).  Despite this deference, "an administrative law judge's assessment of a claimant's credibility must be supported by substantial evidence." *Walters,* 127 F.3d at 531.  The administrative law judge's decision on credibility must be "based on a consideration of the entire record." *Rogers,* 486 F.3d at 247 (internal quotation omitted).

The United States Court of Appeals for the Sixth Circuit has developed a two-step process for evaluating a claimant's complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters,* 127 F.3d at 531 (quoting *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994)).

In making determinations, "[d]iscounting credibility to a certain degree is appropriate where an administrative law judge finds contradictions among the medical reports, claimant's testimony, and other evidence."  (*Id.*)  Furthermore, in assessing credibility, the administrative law judge may consider a variety of factors including "the location, duration, frequency, and intensity of the symptoms; ... [and] the type, dosage, effective-ness, and side effects of any medication taken to alleviate the symptoms ..."  *Rogers,* 486 F.3d at 247.

The record indicates that substantial evidence supports the administrative law judge's credibility determination.  The administrative law judge explained his decision, making it clear the weight he gave plaintiff's statements.  *See Rogers,* 486 F.3d at 248 (noting that administrative law judge decisions "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").  The administrative law judge applied the correct two-step standard in evaluating plaintiff's complaints of pain. First, the administrative law judge determined that "the claimant's medically determin-able impairments could reasonably be expected to produce the alleged symptoms."

20

(*PageID* 180).  Second, the administrative law judge found that plaintiff's statements about the pain's intensity were not credible "to the extent they are inconsistent with the above residual functional capacity assessment . . . ."  (*Id.*)

Because the administrative law judge's decision provides adequate support for the credibility determination, with respect to plaintiff's subjective complaints of pain, the Court defers to the administrative law judge on this issue, and finds no reversible error.

### 3.  Appointment of a Medical Expert

Finally, plaintiff argues that the administrative law judge should have secured the assistance of a medical expert to help explain the findings of plaintiff's treating physicians and to aid in determining whether plaintiff's impairments met the criteria of Listing 1.04A.  As Hines notes, the primary reason an administrative law judge may obtain a medical expert opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind.  *Wise v. Astrue*, 2:09-CV-00355, 2010 WL 3075184 (S.D. Ohio Aug. 4, 2010).  The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert.  HALLEX I-2-5-32 (September 28, 2005).

Plaintiff contends that, "Instead of using his own biased lay opinion to conclude that the EMG and MRI results do not provide evidence of nerve root compression, the administrative law judge should have obtained testimony from a qualified medical

21

expert." (Doc. 11 at *PageID* 1276.)  An administrative law judge must utilize the services of a medical advisor only when it is unclear whether a claimant's impairment is equivalent in severity to a listed impairment, *see* SSR 96-6p, 1996 WL 374180 (1996), or when necessary to establish the onset of disability for slowly progressive impairments, *see* SSR 83-20, 1983 WL 31249 (1983).  Otherwise, an administrative law judge has no duty to seek the opinion of a medical advisor unless, by failing to do so, the administrative law judge fails to fulfill his duty to adequately develop the record and thereby prejudices the claimant. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  *See also Richardson v. Perales*, 402 U.S. at 408 (1971)(recognizing that resort to medical advisors in explaining complex medical problems is permissible but not mandatory).  Plaintiff has offered no persuasive argument to support her position that the administrative law judge in this case was required to seek the advice of a medical expert to determine the severity of plaintiff's pain, the credibility of plaintiff's testimony or the extent of limitation caused by plaintiff's medical condition.  Moreover, plaintiff does not articulate how the testimony of a medical advisor might have changed the result of the proceeding. The undersigned concludes that the administrative law judge did not err in failing to retain the services of a medical advisor.

The administrative law judge relied on the formal functional capacity evaluation, and plaintiff's own testimony regarding her activities of daily living to conclude that she has the residual functional capacity to perform activities which, the vocational expert testified, would allow her to perform a significant number of jobs in the national

economy.  The findings of the administrative law judge in this regard are supported by substantial evidence.

**Conclusions.** From a review of the record as a whole, the Magistrate Judge concludes that there is substantial evidence supporting the administrative law judge's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


     s/Mark R. Abel                 
United States Magistrate Judge